UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

In re:

     NAPPA REALTY, LLC                             BK. 10-11413

     Debtor                                        CHAPTER 11

**2nd AMENDED COMBINED PLAN OF
REORGANIZATION AND DISCLOSURE STATEMENT**

Nappa Realty, LLC, Debtor in possession "(Nappa") hereby proposes this 2nd Amended Plan of Reorganization and Disclosure Statement (the "Plan") pursuant to § 1121 and § 1125 of the United States Bankruptcy Code ("Code").

## I.    DEFINITIONS

1. **Administrative Claim** means any right to payment constituting a cost or expense of administration of the Chapter 11 case of a kind specified under § 503 and entitled to priority under § 507 (a)(i) of the Bankruptcy Code including, without limitation, any actual and necessary costs and expenses of preserving The Estate of the Debtor, and any actual and necessary costs and expenses of operating the business of the Debtor.

2. **Bankruptcy Code** means Title II of the United States Code, 11 U.S.C. §101 <u>et seq</u> ., as in effect on the date hereof.

3. **Bankruptcy Court** means the United State Bankruptcy Court for the District of Rhode Island.

4. **Claim** means a claim, whether asserted or allowed, as defined in § 101(5) of the Bankruptcy Code.

5. **Confirmation Date** means the date on which the Confirmation Order is entered on the docket in the Chapter 11 case.

6. **Confirmation Order** means the Order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

7. **Creditors** shall mean all creditors of the debtor holding claims for debts, liabilities, demands, or claims of any character whatsoever, whether unsecured or secured by assets of the Debtor.

8. **Debtor** means Nappa Realty, LLC.

9. **Effective Date** means the date on the thirtieth (30th) day immediately following the first day on which all conditions of the Plan shall have been satisfied or waived.

10. **Estate** means the Estate created in the Debtor's Chapter 11 Case under § 541 of the Bankruptcy Code.

11. **General Unsecured Creditors** means all claims held by creditors of the Debtor, other than Administrative Claims, Priority Wage Claims, Priority Tax Claims, Secured Claims and Claims of Equity Security Holders and shall include claims arising from the rejection of executory contracts or leases.

12. **Impaired** means when used with reference to a claim or interest, that is impaired within the meaning of § 1124 of the Bankruptcy Code.

13. **Lien** means a mortgage, pledge, judgment lien, security interest, or other encumbrance on Debtor's property which is effective under applicable law as of the date of the filing of Debtor's petition for reorganization as set forth in § 101 (37) of the Bankruptcy Code.

14. **Petition Date** means April 1, 2010, the date on which the Debtor filed its Petition for Relief.

15. **Priority Tax Claim** means any claim, other than an Administrative Claim or a Priority Tax Claim, entitles to priority in Right of payment under § 507 (a)(7) of the Bankruptcy Code.

16. **Schedules** mean the Schedule of Assets and Liabilities filed by Debtor, including any amendments thereto through the Confirmation Date.

17. **Secured Claim** means any Claim secured by liens on the property of the Debtor to the extent of the value of said property, as determined in accordance with § 506 (a) of the Bankruptcy Code.

## II.      INTERPRETATION AND COMPUTATION OF TIME

### 1.  Rules of Interpretation

For purposes of the Plan: (i) whenever it appears appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or (to the extent otherwise permitted, hereafter) may be amended, modified or supplemented from time to time; (iii) unless otherwise specified in a particular reference, all references in the Plan to paragraphs, Articles and exhibits are referenced to paragraphs, Articles and exhibits of or to the Plan; (iv) the words "herein," "hereof," "hereto," "hereunder" and other of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (v) captions and headings to Articles and paragraphs are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of the Plan;

(vi) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and (vii) all exhibits to the Plan are incorporated into the Plan.

**2.    Time Periods**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**III.    INFORMATION ABOUT THE DEBTOR**

**A.    Pre-Bankruptcy History**

The Debtor is a limited liability corporation existing under Rhode Island law since 2002. The Debtor was formed for the purpose of owning and operating a parcel of real estate located at 437-476 Washington Street in Providence, Rhode Island (the "Property"). The Debtor's sole member is Steven M. Nappa.

The Property was financed through a $311,500.00 loan from Rockland Trust Company, successor in interest to Slade's Bank ("Rockland"). The Rockland loan is secured by, among other things, a first mortgage on the Property. The Debtor thereafter, on or about May 15, 2009, guaranteed a $250,000.00 loan from Providence Economic Development Agency ("PEDP") to a related entity, Nappa Building Corporation ("NBC"). NBC was petitioned into Receivership in the Providence Superior Court at Docket Number PB09-7065 and a Receiver was appointed on December 10, 2009. The Receiver subsequently sold the assets of NBC to a related entity, Nappa Construction Management, LLC ("NCM").   The Debtor has a claim for rent in that case but it is doubtful there will be a distribution to unsecured creditors. The Debtor thereafter leased the Property to NCM removed at the rate of $2,500.00/month. NCM defaulted on its rent

4

obligation to the Debtor pre-petition but has since commenced payment of rent through offsets, whereby it directly pays Debtor's obligations owed to utility companies, insurance company and other operational expenses of the Debtor. NCM has also commenced payment of $1,775.70/month rent as of August 2010.

Prior to the filing, the Debtor defaulted on its obligations owing to Rockland. Debtor entered into negotiations with Rockland regarding a forebearance agreement, but was unable to reach agreement with Rockland, leading to the Chapter 11 filing on April 1, 2010.

### B.      Post-Bankruptcy History

Debtor has entered into discussions with Rockland to negotiate a cash collateral agreement and is attempting to negotiate an agreement with Rockland under the Plan. NCM has reached a tentative Forebearance Agreement with PEDP, which will stabilize NCM and permit it to cash flow and commence making rent payments to Debtor in August 2010. Debtor is also attempting to find one or more tenant's to lease a portion of the Property to assist with payment of operational expenses and payment of debt service of the Debtor.

The Debtor has no employees. Steve Nappa provides management services to the Debtor and Russ Golden provides financial and bookkeeping services. Both individuals are employed and are compensated by NCM. Neither PEDP or Rockland have sought relief from the automatic stay in order to exercise their state law rights with respect to their collateral.

The Debtor's sole source of income is direct payments of account payables by and receipts of rental income from NCM. NCM commenced making monthly "triple net" rent payments to Debtor in August, 2010.

Beginning prior to the commencement of this case, Debtor has been exploring options which are intended to ensure a distribution to unsecured creditors of the estate. Among the options being considered by the Debtor are: 1) the refinancing of the Rockland obligation, 2) the sale of the Property, 3) the lease of a portion of the Property to third parties, and 4) a loan from Debtor's principal and/or related entities. These options have been formulated into the Debtor's Plan.

The Debtor presently owes Rockland approximately $285,000.00. The obligation is secured by inter alia, a first mortgage on the Property, a security interest in substantially all personal property, an assignment of leases and rents and the guaranty of Debtor's sole member/principal Steven Nappa.  PEDP is presently owed approximately $247,000.00, which is secured by, inter alia, a second mortgage on the Property, a second mortgage on the residence of Steven Nappa, the direct obligation of NCM, the guaranties of Steven Nappa and NBC and an assignment of leases and rents on the Property.

It is the belief of the Debtor that the present value of the Property is approximately $500,000.00. It is the belief of the Debtor that Rockland is adequately protected and fully secured by the value of the Property and PEDP is adequately protected and fully secured by a combination of the second mortgage on the Property, a second mortgage on Steven Nappa's home and other collateral.

## IV.    VOTING PROCEDURE

The Bankruptcy Court has reviewed this proposed Combined Plan of Reorganization and Disclosure Statement and approved its use in lieu of the customary separate disclosure statement and proposed plan. However, the Court has yet to finally determine whether this document contains "adequate information" such that voting classes may evaluate the Plan and its effect on Claims and interests as required by §1125 of the Bankruptcy Code. If you believe that this Combined Disclosure Statement and Plan Reorganization does not allow you to meaningfully evaluate the plan and its effect on your claim or interest, please submit the Ballot Form provided nonetheless. However, you should also file your objection to the disclosures contained within this document with the Bankruptcy Court. The determination as to whether this Combined Plan and Disclosure Statement contains adequate information will be made by the Court on the date set for the confirmation hearing. If the Court determines that this document does not contain adequate information, the disclosures will be supplemented as required and acceptances and rejections of the Plan will be solicited again. All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and returning the enclosed Ballot Form to the Debtor's counsel:

**Peter J. Furness, Esq.**
**100 Midway Place, Suite 1**
**Cranston, RI   02920**

**BALLOTS MUST BE RECEIVED ON OR BEFORE 5:00 P.M. ON _____, 2010** TO BE COUNTED IN THE VOTING. BALLOTS RECEIBED AFTER THIS TIME WILL NOT BE COUNTED IN THE VOTING UNLESS THE COURT SO ORDERS.

**THE DEBTOR RECOMMENDS A VOTE TO "ACCEPT" THIS PLAN.**

Each party in interest entitled to vote on the Plan will receive one Ballot for each Claim or Interest to which it belongs. Because some parties may be in more than one class for voting purposes, more than one Ballot may be included with this combined plan and disclosure statement. Each member of the voting class will be asked to vote for acceptance or rejection of the Plan. A party who holds claims in more than one class should complete a Ballot for each class with respect to the applicable portion of its claim included in each class.

**THE BANKRUPTCY COURT HAS DETERMINED THAT THURSDAY, _____, 2010 IS THE LAST DATE BY WHICH ALL BALLOTS MUST BE RECEIVED.** All parties eligible to vote on the Plan are urged to complete and return their Ballots promptly to avoid delay in confirmation of the Plan.

**V.     THE PLAN AND ITS EFFECTS**

This proposed plan provides for interest only payments to Rockland and the refinance and/or sale and payment of the Rockland obligation in full within nine (9) months of the Effective Date, the reduction of the PEDP obligation by related 3rd parties, the generation of additional rental income and the payment of administrative claims and unsecured creditors in full through subordinated funding from insiders. The Debtor has determined in today's market, it will take nine (9) months from the Effective Date to consummate a refinancing or sale of the Property sufficient to pay Rockland in full. If the Debtor is unable to refinance or sell the Property within nine (9) months from the Effective Date, the Debtor will grant Rockland relief from stay to foreclose their mortgage. There are no other assets to be administered in this matter.

The objective of a Chapter 11 case is the formulation of a plan of reorganization. The plan is a vehicle for resolving claims against the Debtor. Creditors are given an opportunity to vote on any proposed plan, and the plan must be confirmed by the Bankruptcy Court to be valid and binding on all parties. Once the plan is confirmed, all claims against the Debtor which arose before the Chapter 11 proceeding was initiated are extinguished, unless specifically preserved in the Plan.

## VI.    TAX MATTERS

This proposed plan will have no material Federal tax consequences on the Debtor. Typical creditors in this case may be allowed a tax deduction for any loss sustained as a result of the Debtor's failure to pay its obligation in full. Claimants and creditors seeking a more full explanation of the tax consequences of this plan should consult a tax specialist.

## VII.    CONFIRMATION

### A. Approval of this Combined Plan of Reorganization and Disclosure Statement pursuant to 11 U.S.C. § 1125

In lieu of a separate disclosure statement which must be approved prior to solicitation of acceptances of the proposed plan of reorganization, the Debtor has placed the information customarily included in a disclosure statement within this document. However, this Combined Plan and Disclosure Statement has not received final approval of the Bankruptcy Court as containing sufficient information about the provisions of the propose plan so as to allow holders of claims and interests to make an informed decision concerning the acceptance or rejection of the Debtors plan. The final determination concerning the sufficiency of the disclosures made in this document will be made at the confirmation hearing which is described below.

### B.  The Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. The Confirmation Hearing in respect to the Plan has been scheduled for _____, 2010 at 10:00 a.m. Eastern Time, before the Honorable Judge Arthur Votolato at the United States Bankruptcy Court for the District of Rhode Island. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice expect for an announcement of the adjourned date made at the Confirmation Hearing. Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objector. Any such objection must be filed with the Bankruptcy and served on the following parties on or before _____, 2010 at 4:00 p.m., Eastern Time:

Counsel for the Debtor:
Peter J. Furness (#3608)
Sinapi Formisano & Co., Ltd.
100 Midway Place, Ste 1
Cranston, RI   02920
pjf@sfclaw.com

Counsel for Rockland Trust Company:
Raymond Pelote, Esq.
Wynn & Wynn, P.C.
90 New State Highway
Raynham, MA 02767
rpelote@wynnandwynn.com

United State Trustee:
Office of the United States Trustee
Gary Donahue, Esq.
10 Dorrance Street, Suite 910
Providence, RI 02903
ustpregion01.pr.ecf@usdoj.gov

### C.  Acceptances Necessary to Confirm Plan

At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether each impaired class has accepted the Plan. Under § 1126 of the Bankruptcy Code, an impaired class is deemed to have accepted the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is acceptance of the Plan by all members of an impaired class, the Bankruptcy Court must also determine that under the Plan the class members will receive property of a value, as of the effective date of the plan, that is not less than the amount that such class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### D.  Confirmation of the Plan without the Necessary Acceptances

Under the so-called "cramdown" provision of the Bankruptcy Code, so long as one impaired class of creditors accepts the Plan, the Plan may be confirmed even if it is not accepted by all of the impaired classes. The cramdown provision is set forth in 1129(b) of the Bankruptcy Code and requires, among other things, that the Bankruptcy Court finds that the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class which has not accepted the Plan.

With respect to secured creditors, the cramdown provision requires either: (i) the retention of the secured creditor's lien and the receipt by the secured creditor of deferred cash payments totaling not less than the value of the secured creditor's interest in its collateral; (ii) the sale of the secured creditor's collateral and the payment of the

proceeds of that sale to the secured creditor; or (iii) the realization by the secured creditor of the "indubitable equivalent" of its claims.

With respect to unsecured claims, the cramdown provision requires that unsecured claimants must either receive the full value of their claims or, if they receive less, that no class with junior liquidation priority may receive anything. The Debtor may, at its option, choose to rely upon the cramdown provisions (§1129(b)) to seek confirmation of the Plan if it is accepted by an impaired class or classes of Creditors.

### VIII.   CLASSIFICATION OF CLAIMS AND INTERESTS

The following Sections designate the Classes of Claims and Interests and their respective treatment under the Plan. In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Claims have not been classified (but are nonetheless described below). Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes.

Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account of any Claim or Interest that is not an Allowed Claim or an Allowed Interest.

### 1.   **Administrative Expense Claims**

Except with respect to Administrative Expense Claims that are Professional Compensation and Reimbursement Claims and except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment of such Holder, each Holder of an Allowed Administrative Expense Claim shall be paid in full in

Cash on the latter of the Effective Date, the date such Administrative Expense Claims is

Allowed, and the date such Administrative Expense Claim becomes due and payable, or

as soon thereafter as it practicable; provided, however, that Allowed Administrative

Expense Claims that arise in the ordinary course of the Debtor's business shall be paid in

full in the ordinary course of business in accordance with the terms and subject to the

conditions of any agreements governing, instruments evidencing, or other documents

relating to, such transactions.

**2.   Professional Compensation and Reimbursement Claims**

Except as provided herein, all Entities seeking approval by the Bankruptcy

Court of compensation for services rendered or reimbursement of expenses incurred

through and including the Confirmation Date under section 330, 331, 503(b)(2),

503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (1) file, on or before the

date that is thirty (30) days after the Effective Date, their respective applications for final

allowances of compensation for services rendered and reimbursement of expenses

incurred and (2) be paid in full, in Cash, in such amounts as are Allowed by the

Bankruptcy Court in accordance with the order relating to or Allowing any such

Administrative Expense Claim. The Reorganized Debtor is authorized to pay

compensation for Professional services rendered and reimbursement of expenses incurred

after the Confirmation Date in the ordinary course without the need for Bankruptcy Court

approval.

The law firm of Sinapi Formisano & Company, Ltd. has acted as counsel to

the Debtor. The fees of Sinapi Formisano & Company, Ltd. are entitled to administrative

priority pursuant to §507(a)(1) of the Bankruptcy Code. At the time of the submission of

this combined plan and disclosure statement for approval by the Court, the balance due to

Sinapi Formisano & Company, Ltd. ("SFC") is estimated to be $19,500.00 in fees and

costs incurred. The Debtor paid SFC a retainer in the amount of $3,000.00, which is

being held by SFC subject to the submission of a fee application and Court approval.

These fees will be paid in full, as allowed by the Court, upon the effective date of the

Plan or as soon thereafter as is practicable through funding from the Debtor, the Debtor's

principal, NCM or a combination thereof.

**3.**  **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive, on the Effective

Date or such later date as such Allowed Priority Tax Claim becomes due and payable, at

the option of the Debtor, one of the following treatments on account of such Claim: (1)

Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus, to the

extent provided by section 511 of the Bankruptcy Code, interest at the rate determined

under applicable nonbankruptcy law; (2) such other treatment as may be agreed to by

such holder and the Debtor or otherwise determined upon an order of the Bankruptcy

Court; or (3) treatment in accordance with the terms set forth in section 1129(a)(9)(C) of

the Bankruptcy Code.

The timing and procedures for all distributions specified in this Section are

governed by Section 8.02 (Method of Distributions Under the Plan), as modified by

Section 8.04 (Disputed Claims and Disputed Interests; Reserve and Estimations).

**4.**  **Quarterly Fees**

The quarterly fees payable to the U.S. Trustee pursuant to 28 U.S.C. §1930

('Quarterly Fees") will be paid in full upon the Effective Date. All presently due and

future will be paid by Debtor or through funding from Debtor's principal, NCM or a combination thereof.

After Confirmation, through the closing date of the Bankruptcy case pursuant to 11 U.S.C. §350 and the entry of a final decree pursuant to Fed. R. Bankr. P. 3022, the reorganized debtor (1) will pay all fees payable under 28 U.S.C. §1930(a)(6), and (2) will timely file with the Court and serve, as required by rule 3020-2 of the Local Bankruptcy Rules of the Court.

**5.   Classification of Claims**

**Class 1: Secured Claim of Rockland**

Class 1 shall consist of the secured claim of Rockland for amounts owed to Rockland by Debtor under its various loan agreements. The Class 1 Claim will be paid in full through a refinancing or sale of the Property. The Class 1 Claim is impaired.

**Class 2: Secured Claim of PEDP**

Class 2 shall consist of the secured claim of PEDP for amounts owed to PEDP by Debtor under its various loan agreements. The Class 2 Claim will be paid in full pursuant to the terms of a forbearance agreement. The Class 2 Claim is impaired.

**Class 3: General Unsecured Claims**

Class 3 shall consist of all claims which are not included in the preceding classes nor contained within the following subordinated classes of unsecured claims. Class 3 Claims will be paid in full on the Effective Date. The Class 3 Claims are impaired.

**Class 4: Equity Security Holders**

Class 4 consists of the rights of Steven Nappa on account of his sole membership interest in the Debtor. Class 4 Claim will receive no distribution under the Plan but retain their membership interest in the Debtor. The Class 4 Claim is impaired.

## IX.     TREATMENT OF CLAIMS AND INTERESTS

The Debtor is proposing to pay in full the Rockland claim, through funding/ refinancing from a new lending source or through the sale of the Property. The Debtor is proposing a period of nine (9) months from the Effective Date to obtain and close on the new financing or sale and pay in full the Rockland claim. During the nine (9) month period, Debtor will pay Rockland the amount of $1,500/month (interest only) towards the Rockland Class 1 claim, to be derived from rental income. Debtor will also commence payment to Rockland for insurance premiums due (presently at the rate of $275.70/month) or obtain and pay directly for equivalent insurance at a cheaper premium rate if one can be obtained.  During the (9) month period following the Effective Date, if Debtor fails to make an interest payment  or insurance premium payment to Rockland (and if Debtor fails to cure within five days of receipt of written notice of default from Rockland) upon filing of a Certificate of Non-compliance, Rockland will be granted relief from stay, without requirement of further hearing.  Upon the expiration of the nine (9) month period following the Effective Date, if the refinancing or sale, closing and payment to Rockland does not occur, the Debtor will consent to Rockland being granted relief from stay.

The PEDP claim will be paid through the Debtor's related entity, NCM, outside the Plan pursuant to terms of a forebearance agreement entered into by PEDP and NCM. No Debtor assets will be used to pay the PEDP claim, however, PEDP will retain

its second mortgage on the Property and its junior security interest in personal property of the Debtor and assets of the Debtor's principal.

On the Effective Date, Debtor will pay all Administrative Claims in full and will make a distribution to Class 3 claimants in an amount sufficient to pay all class 3 claimants 100% of their Allowed Claims.  The funding for payment of Administrative Claims and Class 3 claims will be provided through funding come from the Debtor's principal from NCM or a combination thereof.

The Class 4 Claim consists of the equity interest claim of Steven Nappa, which will receive no distribution under the Plan. Steven Nappa will retain his membership interest in the Debtor.

## X.   IMPAIRMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Classes 1, 2, 3 and 4 are impaired under the Plan.

## XI.   VOTING RIGHTS

Classes 1, 2, 3 and 4 are entitled to a vote to accept or reject the Plan as proposed.

## XII.   ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS

Except for those leases and executory contracts which have previously been assumed and assigned, all of the Debtor's executory contracts and leases shall be deemed rejected.

## XIII.   LIQUIDATION ANALYSIS

With respect to each Impaired Class of Claims and Interests, confirmation of the Plan by the Bankruptcy Court requires that each holder of a Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were

liquidate under Chapter 7 of the Bankruptcy Code. To determine what holders of Claims and Interests of each Impaired Class would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and Property in the context of a Chapter 7 liquidation case. The Cash amount that would be available for satisfaction of Claims and Interests would consist of the net proceeds resulting from the disposition of the Property and the unencumbered assets of the Debtor, augmented by the unencumbered Cash held by the Debtor at the time of the commencement of the liquidation case. Such amount would be reduced by payment of debt secured by said assets and by the amount of the costs and expenses of the liquidation and by such additional Administrative Claims and Priority Claims that might result from the termination of the Debtor's business and the use of Chapter 7 for purposes of liquidation.

The Debtor's costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy, as well as those fees that might be payable to attorneys and other professionals that such a trustee might engage. Claims may arise in a liquidation case or result from the pending Chapter 11 Case, including unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims and Interests.

To determine if the Plan is in the best interests of each Impaired Class, the present value of the distributions from the proceeds of a liquidation of the Debtor's unencumbered assets and property, after subtracting the amounts attributable to the

foregoing Claims, are then compared with the value of the property offered to such Classes of Claims and Interests under the Plan.

After considering the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in this Chapter 7 Case, the Debtor has determined that confirmation of the Plan by the Bankruptcy Court will provide each holder of an Allowed Claim or Interest with a recovery that is not less than such holder would receive pursuant to liquidation of the Debtor under Chapter 7.

### XIV.   RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Code, until the final allowance or disallowance of all Claims affected by the Plan, and with respect to the following matters:

1. To enable the Debtor to consummate the Plan to resolve any disputes thereto;

2. To enable the Debtor to consummate any and all proceedings which it may bring prior to the entry of the order of confirmation to set aside liens or encumberances, and to recover any preferences, transfers, assets or damages to which it may be entitled under all applicable provisions of the Code or other federal, state or local law;

3. To liquidate damages in connection with any disputed, contingent or unliquidated claims;

4. To adjudicate all controversies concerning the classification or allowance of any claims or interests;

5. To adjudicate all claims of a security interest in any property of the estate transferred hereunder or in any proceeds thereof;

6.  To adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of this Chapter 11 case; and

7.  To make such other orders as are necessary or appropriate to carry out the provisions of this Plan including the entry of an Order finding non compliance and an Order granting relief from stay.

### XV.    MISCELLANEOUS PROVISIONS

1.  **Preservation of Causes Of Action.** Except in any contract, instrument, release or other agreement entered into in connection with the Plan or as otherwise provided in the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Debtor shall retain all Claims, rights of action, suits or proceedings arising out of any causes of action, whether known or unknown, contingent or non-contingent, liquidated or unliquidated, in law or in equity, that the Debtor or the Estate may hold against any Person.

2.  **Discharge of Debtor and Injunction.** Except as otherwise provided in the Plan or the Confirmation Order: (i) on the Effective Date, the Debtor shall be deemed discharged and released to the fullest extent permitted by § 1141 of the Bankruptcy Code from all Claims and Interest, including, but not limited to, demands, liabilities, Claims and Interests that arose before the Confirmation Date and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code; and (ii) all Personas shall be precluded from asserting against the Debtor, its successor, or its assets or properties any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the

Confirmation Date. Except as otherwise provide in the Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtor as provided in §§ 524 and 1141 of the Bankruptcy Code, and such discharge shall avoid any judgment against Debtor at any time obtained to the extent that it relates to a Claim discharged.

3.   **Other Documents and Actions.** The Debtor may, and shall file or execute such documents and take such other action as are necessary to effectuate the transactions provided for in the Plan.

4.   **Effect of Order Denying Confirmation.** If any order denying confirmation of the Plan is entered by the Bankruptcy Court, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Interests in the Debtor, (b) prejudice in any manner the rights of the holder of any Claim against, or Interest in, the Debtor, (c) prejudice in any manner any right, remedy or Claim of the Debtor, or (d) be deemed an admission against interest by the Debtor.

5.   **Payment of Statutory Fees.** All fees payable on or before the Effective Date pursuant to Section 1930 of Title 28 of the United States Code shall be paid on the Effective Date or soon as practicable thereafter.

6.   **Modification or Withdrawal of the Plan.** The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend, modify or withdraw the Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor, with the reasonable consent of Rockland and PEDP may amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistency in the Plan in

such a manner as may be necessary to carry out the purpose and intent of the Plan. A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

7. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or except as set forth in any applicable document, the laws of the State of Rhode Island shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

8. **Notices.** All Notices, requests and demands hereunder to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed and addresses as provided fro herein.

9. **Successors and Assigns.** The rights, benefits and obligations of any Person names or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, trustee, administrator, successor or assign of such Person.

10. **No Admissions or Waiver of Objections.** Notwithstanding anything herein to the contrary, nothing contained herein shall be deemed to be an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or Interest or the statements herein as judicial admissions.

**XVI.   BALLOTING**

Each holder of an Allowed Claim or an Allowed Interest entitled to vote on the Plan will receive a ballot. The ballot will contain two (2) boxes, one (1) indication acceptance of the Plan and the other indicating rejection of the Plan. Holder of Allowed Claims or Allowed Interests who elect to vote on the Plan must mark one (1) or the other box pursuant to the instructions contained on the ballot. Any executed ballot that does not indicate acceptance or rejection of the Plan, or any ballot that is not completely filled in, will be deemed to be acceptance of the Plan.

Submitted By,
Nappa Realty, LLC,

/s/Peter J. Furness
Peter J. Furness (#3608)
Sinapi Formisano & Co., Ltd.
100 Midway Place, Ste 1
Cranston, RI   02920
pjf@sfclaw.com

## NOTICE

Within ten (10) days after service as evidenced by the certification (twenty (20) days for U.S. Government officers and agencies thereof) of the foregoing paper, and an additional three (3) days pursuant to Fed. R. Bankr. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party in interest who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, Sixth Floor, Providence, RI   02903 (401) 528-4477.  If no such objection is filed within the time allowed herein, the paper will be deemed unopposed and will be granted, unless (1) the requested relief is prohibited by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court the interest of justice requires otherwise.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the within was mailed postage prepaid or via electronic mail to the following this 12th day of August, 2010.

Gary Donahue          ustpregion01.pr.ecf@usdoj.gov

Rockland Trust
c/o Raymond Pelote, Esq.
Wynn & Wynn, P.C.
90 New State Highway
Raynham, MA 02767

Josh Teverow, Esq.
55 Pine Street, Suite 2
Providence, RI  02903

Providence Economic Development
Department of Planning & Development
400 Westminster Street
Providence, RI 02903

City of Providence
Tax Assessor's Office
25 Dorrance Street, Unit 1
Providence, RI 02903

Narragansett Bay Commission
One Service Road
Providence, RI 02905

National Grid-Electric
P.O. Box 1049
Woburn, MA 01807

National Grid-Gas
P.O. Box 1048
Woburn, MA 01807

Providence Water
P.O. Box 1456
Providence, RI 02901

Rhode Island Division of Taxation
One Capital Hill
Providence, RI 02903